UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| MICHELLE N. ALLEN | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Consolidated Case | |
| v. | ) | No.  4:11CV01255 AGF | |
| | ) | | |
| NEVIN WATERS, D.D.S., PC, | ) | | |
| | ) | | |
| | ) | | |
| Defendant. | ) | | |

_____

| | | | |
|---|---|---|---|
| MICHELLE N. ALLEN | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Associated Case | |
| | ) | No.  4:11CV01256 AGF | |
| REACHOUT HEALTHCARE AMERICA, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM AND ORDER**

This is a consolidated employment discrimination action brought by pro se

Plaintiff Michelle Allen against Nevin Waters, D.D.S., her former employer, and

Reachout Healthcare America ("Defendants").  Now before the Court is Defendants'

Motion to Enforce Settlement Agreement.  (Doc. No. 70.)  For the reasons set forth

below, Defendants' motion to enforce the settlement agreement will be granted.

Plaintiff initially filed separate suits against Nevin K. Waters, D.D.S., P.C. and

ReachOut Healthcare America on July 15, 2011.  This Court consolidated the two matters

on October 4, 2011. (Doc. No. 17.)  Pursuant to the Court's alternative dispute resolution

process, Plaintiff and Defendants jointly agreed to mediate this case.  At Plaintiff's

request, the Court appointed counsel for the limited purpose of representing Plaintiff

during the alternative dispute resolution process, and attorney Andrew Callahan was

appointed.  (Doc. No. 47.)   The parties concurred in the selection of George Fitzsimmons

to mediate the case.  Mediation was held on March 27, 2012, and at the end of the day-

long mediation process, the parties signed a Settlement Agreement and a Stipulation of

Dismissal.  (Doc. Nos. 69-1 and 71-3.)  On March 28, 2012, after she signed the

Settlement Agreement, Plaintiff filed a document with the Court indicating that she did

not wish to proceed with the settlement.  (Doc. No. 63.)  On March 29, 2012, pursuant to

the Court's local rules, the mediator filed his ADR Compliance Report, stating that the

parties had mediated in good faith and had achieved a settlement.  (Doc. No. 65.)

Defendants moved for enforcement of the settlement, and the Court held a hearing on the

motion on April 26, 2012.   At the hearing, Plaintiff and counsel for the Defendants

presented their positions to the Court, and Mr. Fitzsimmons, Mr. Callahan and Plaintiff

testified concerning the conduct of the mediation and settlement negotiations.

**Applicable Law**

Settlement agreements are favored by the courts, and where the terms are

unambiguous, a federal district court has inherent authority to enforce a settlement

agreement entered into by the parties in a pending case. *Barry v. Barry*, 172 F.3d 1011,

1013 (8th Cir. 1999) (citing *Gatz v. Southwest Bank of Omaha*, 836 F.2d 1089, 1095 (8th

Cir. 1988)); *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 737 F. Supp. 1070,

1086 (E.D. Mo. 1990), *aff'd*, 985 F.2d 564 (8th Cir. 1991) (citing *Leon Industries, Inc. v.

I.C.N. Pharmaceuticals*, 472 F. Supp. 1241, 1242 (E.D. Mo. 1979)).   "Once parties have

settled a dispute and have agreed to settlement terms, the parties cannot rescind it."

*Caleshu v. Merrill Lynch*, 737 F. Supp. 1070, 1086 (E.D. Mo. 1990) (citing *Kelly v.

Greer*, 365 F.2d 669, 673 (3rd Cir. 1966)).  A party cannot avoid an otherwise

enforceable settlement agreement merely because she later changes her mind or

determines that the amount of the settlement is now unsatisfactory.  *Worthy v. McKesson

Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985); *Washington v. Blunt*,  No.

08–CV–4092–NKL , 2011 WL 2709833, at *2 (W.D. Mo. Jul. 12, 2011).

Basic principles of contract law govern the enforcement of a settlement agreement.

*Chaganti & Assocs., P.C. v.. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citations

omitted).  Under Missouri law, a party seeking specific performance of a settlement

agreement bears the burden of demonstrating the existence of the agreement by clear,

convincing, and satisfactory evidence.  *Vulgamott v. Perry*, 154 S.W.3d 382, 388 (Mo. Ct.

App. 2004); *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. Ct. App. 1998).  To

enforce a settlement agreement the parties must have reached agreement on the essential

terms of the deal.  *Sheng v. Starkey Labs*., 117 F.3d. 1081, 1083 (8th Cir. 1997); *Miess v.

Port City Trucking, Inc.*, No. 4:09CV1124 CDP, 2012 WL 401050, at *3 ( E.D. Mo. Feb.

8, 2012).  If the essential terms have been agreed upon, a party's decision ". . . after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation."  *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1055 (8th Cir. 2003).

**Findings of Fact**

On the basis of the record before it and the testimony elicited at the hearing, the Court finds the following facts.  On March 27, 2012, Plaintiff, represented by her limited purpose attorney, Mr. Callahan, and Defendants' counsel Karen Halbrook[1] engaged in a day-long mediation session.  By stipulation of the parties, Defendants did not attend the mediation in person, but were reachable by phone, and Ms. Halbrook had full authority to negotiate on their behalf.

The mediation began at 9:30 a.m. and lasted until 5:00 p.m., with a break for lunch.  Mr. Callahan was present during the entire mediation.  Plaintiff understood Mr. Callahan was representing her and knew that she could ask him any questions that she had, and testified that she was satisfied with Mr. Callahan's representation of her.

---

[1]    Plaintiff expressed concern that Ms. Halbrook was present on the day of the mediation rather than Adam Seibers, another attorney for Defendants whom Plaintiff knew from previous proceedings.  During the mediation and at the hearing before the Court, Plaintiff was troubled because she recognized Ms. Halbrook from another setting and mistrusted Ms. Halbrook because she believed Ms. Halbrook was biased against her and had some association with the county or "with the courts."  At the hearing, however, Plaintiff had no problem with Ms. Halbrook, other than the fact that her previous dealings had been with Mr. Seibers.  On the record before it the Court finds no factual basis for Plaintiff's concerns, or any legal issues related to Ms. Halbrook's involvement.

Plaintiff initially rejected Defendants' monetary offers, but the discussions continued, and

at 12:30 p.m. the parties reached a settlement in principle whereby Plaintiff agreed to

dismiss her claims against all Defendants in exchange for a specific sum of money as set

forth in the Settlement Agreement. (Doc. No. 69-1,¶ 1.) From 12:30 p.m. to 5:00 p.m.,

the parties continued to negotiate with respect to the other terms of the Settlement

Agreement. The parties revised the proposed non-monetary terms of the agreement

several times throughout the afternoon, but eventually reached accord as to the terms of

the Settlement Agreement. At approximately 5:00 p.m. and with her attorney present,

Plaintiff signed the Confidential Settlement Agreement and Stipulation of Dismissal.

(Doc. Nos. 69-1 and 71-3.) At no time did Plaintiff indicate that she intended to disavow

the settlement agreement, nor did she attempt to revoke her attorney's authority to

represent her. In accordance with their agreement, on April 4, 2012, after all Defendants

signed the Settlement Agreement, they sent to Plaintiff, by express mail, a check (Doc.

No. 71- 4) for the amount specified in the Settlement Agreement.

On the basis of these findings, the Court concludes that Defendants have

demonstrated by clear and convincing evidence that the parties negotiated in good faith,

came to agreement on the essential terms of the deal, and then finalized the particulars of

their settlement agreement during the course of the March 27, 2012 mediation session.

The Settlement Agreement and Stipulation of Dismissal embody the terms of that

agreement and Plaintiff freely executed those documents. She is now bound to comply

with that agreement. *See Visiting Nurs Ass'n*, 347 F.3d at 1055.

Plaintiff has not offered, and there is no evidence on the record, of fraud, undue influence or duress during the mediation process. At most, Plaintiff's attorney provided his advice with regard to the strength of her case, should she proceed to trial, but no misrepresentations were made to induce Plaintiff's agreement, nor was Plaintiff coerced in any manner. In addition, Plaintiff has not shown and the Court finds no evidence of mutual mistake or lack of consideration with respect to the terms of the Settlement Agreement or the Stipulation for Dismissal. Defendants have executed the Agreement and delivered Plaintiff a check for the sum set forth in ¶ 1 of the Settlement Agreement, satisfying their obligations thereunder. On the basis of the foregoing, the Court concludes that the Settlement Agreement and Stipulation for Dismissal should be enforced.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for enforcement of settlement (Doc. No. 70) is **GRANTED**.

**IT IS FURTHER ORDERED** that the terms of settlement set forth in the Michelle N. Allen Confidential Settlement Agreement and Release of All Claims, (Doc. No. 69-1), executed by Plaintiff on March 27, 2012, shall be enforced as written.

**IT IS FURTHER ORDERED** that, in addition to a copy of this Order and Memorandum, the Clerk of the Court is instructed to deliver to Plaintiff, by way of first class mail, return receipt requested, the settlement check (Doc. No. 71-4 ) she deposited

with the Court on April 6, 2012.

**IT IS FURTHER ORDERED**, pursuant to the parties' Stipulation of Dismissal

(Doc. No. 71-3) that the case is dismissed, with prejudice, each party to bear its own

costs.

**IT IS FURTHER ORDERED** that all other pending motions are dismissed as

moot.

_**Audrey G. Fleissig**_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of May, 2012.